Kelly v. The Lehigh Valley Coal Co.

---

PATRICK KELLY, Respondent, *against* THE LEHIGH VALLEY COAL COMPANY, Appellant.

(Decided June 16th, 1879.)

The defendant was a corporation engaged in mining coal, which it shipped over a railroad having a terminus at Perth Amboy under a freight contract which bound the railroad company to deliver the coal on board boats at Perth Amboy, and the defendant then gave to the persons to whom it wished coal delivered orders for the delivery of coal, directed to the agent of the railroad company at Perth Amboy, who delivered the coal on board of the boats according to such orders: *Held*, that the railroad company's agent was not the agent of the defendant, and the defendant was not chargeable with his acts, or bound by his declarations in the delivery of coal to persons to whom the defendant had given orders therefor. And *Held* further, that where the captain of the plaintiff's boat having received an order for the delivery by such railroad agent at Perth Amboy on board of the plaintiff's boat of two hundred and fifty tons of coal, and knowing that she was incapable of carrying that amount, nevertheless delivered the order and allowed such railroad agent to put on board two hundred and fifty-eight tons, and the boat in consequence thereof sank in attempting to transport it, that there was negligence on the part of the captain which prevented a recovery against the defendant for the loss of the boat.

APPEAL from a judgment entered upon a decision of the

general term of the Maine Court, affirming a judgment entered upon the verdict of a jury in favor of plaintiff, and from an order denying a motion for a new trial upon the minutes.

The facts are stated in the opinion.

*Augustus Van Wyck*, for appellant.

*Edward D. McCarthy*, for respondent.

BEACH, J.—The plaintiff was owner of the canal boat John Snyder, Jr., and in May, 1877, one John Hennesey was her captain. The defendant is a foreign corporation, organized under the laws of Pennsylvania, engaged in mining coal, which is shipped over the Lehigh Valley Railroad to Perth Amboy in the State of New Jersey, passing at that point from the cars through shoots into boats for water transportation. The former company employs the latter to carry and deliver the coal for a stipulated price per ton. The deliveries of the coal upon the boats are regulated in kind and amount by orders issued by the defendant from its office in New York, addressed to an agent of the railroad at Perth Amboy, naming the boat, the consignee, the number of tons of coal, the freight price per ton, the place of destination, also specifying that the captain is to attend the guy, and directing the boat to be so loaded. In the case at bar an order substantially in the above terms, dated May 16th, 1877, was given to the captain upon his application. It was addressed to E. R. Bulkley, Perth Amboy, who was the shipping agent of the railroad company, and not in the employ of the defendant. By its terms the boat was to take two hundred and fifty tons of coal consigned to parties in Sing Sing, N. Y. On the day following the plaintiff stated to the person in charge of defendant's office, that the boat could not safely carry the cargo named, and that if put on, it would sink her. He was told in reply that the boat would be held responsible to carry that load, and he rejoined, "I will stop it if I possibly can." He went to Perth Amboy

the evening of May 17th, and then and there informed Mr. Bulkley of the boat's inability to bear two hundred and fifty tons. Another interview took place the morning of May 18th between the plaintiff, the captain and Bulkley, when an advance was made the two former on account of the freight money. Nothing definite seems to have been said at that time in regard to the number of tons. The loading began the morning of May 18th, and *two hundred and fifty-eight* tons of coal were placed on the boat. The captain was in charge and could have stopped taking on coal at any time. The boat sank shortly after leaving port. This action was brought to recover the damage resulting from her loss. Judgment was entered upon a verdict given in plaintiff's favor, from which, and the order denying the motion made for a new trial upon the minutes, this appeal was taken.

The original complaint is founded upon a contract appearing to have been made in the State of New Jersey. The amendment allowed upon the trial incorporated in it the one made with the defendant in the city of New York. The judgment could not be sustained upon the former, because the Marine Court would have been without jurisdiction. It does not clearly appear from the record whether or not the sinking of the boat was within this State. The witnesses locate the place about nine miles this side of Perth Amboy, and probably in the sound between Staten Island and New Jersey, but upon which side of the *filum aquæ* is not shown. That boundary of the State of New York is the centre of the waters between those territories. (*The People, &c.,* v. *The Central Railroad Co. of New Jersey,* 42 N. Y. 283.) It is therefore impossible to determine in which jurisdiction the disaster happened. If the action should be deemed one *ex delicto* this uncertainty would be embarrassing, but I am of opinion that it is upon contract. (*Conaughty* v. *Nichols,* 42 N. Y. 83; *Harris Ex., &c.,* v. *Todd, Jr.,* 16 Hun, 248.) The jurisdiction of the Marine Court can therefore be maintained only upon the theory that the suit is brought upon the contract made with the defendant in the city of New

York; but if so upheld, there is no allegation or proof of any breach, and the claim would resolve itself into one for negligently overloading the boat, unless from the terms of the agreement a stipulation not to load beyond two hundred and fifty tons may be implied. Assuming that implication to be admissible, two questions are presented.

*First.* Whether the defendant is chargeable with the acts, or bound by the declarations of Bulkley, to whom its order was addressed.

*Second.* Whether the participation of the captain in the loading of the boat does not relieve the defendant from all liability.

I do not think the address of the order to Bulkley sufficient to make him so far represent the defendant as to bind it by his acts and statements testified to by the plaintiff. He is shown by the defense to have been the shipping agent of the railway company, over whose road the coal mined by the defendant was carried to Perth Amboy under a freighting contract, which included placing the coal on boats; it also appears that he never was in the defendant's employ, and in no wise under its control. It would be impossible to conclude from such facts that he had any authority to modify the order issued by the defendant, or in any way to change it beyond the power therein expressed.

In this view, the case briefly stated shows a contract made by the captain of the boat to carry two hundred and fifty tons of coal from Perth Amboy to Sing Sing, with the knowledge on his part, and also the owner's, that the boat would sink under a load of from two hundred and thirty to two hundred and forty-two tons. The terms of this agreement were known to the plaintiff before the loading began, and having been plainly advised by the defendant's agent of its intention to hold the boat to the charter, it rested with him either to accept or decline the freight. He was at Perth Amboy subsequent to this notification, and before any coal had been placed on board. The boat was under his control and could easily have been moved from alongside the railway dock. The cap-

tain testifies that he contracted to carry two hundred and fifty tons, well aware of the utter want of capacity in the boat to bear any amount in excess of two hundred and forty-two. He was in charge while the lading progressed, and received without objection, or even enquiry, two hundred and fifty-eight tons. With this knowledge he was bound to inform himself of the quantity received, and decline to take any weight endangering the boat. This he did not do, although it appears from the evidence that such information was readily obtainable. Neither the plaintiff or himself seem to have taken the least precaution in this regard, and from that neglect the loss resulted. In any view I have been able to consider the evidence, it seems to me that whatever negligence may be claimed it was at least mutual as to the parties to the record and the captain. The defendant is thereby relieved from liability.

I am of opinion that the judgment of the court below should be reversed and a new trial ordered, with costs to abide the event.

LARREMORE, J., concurred.

Judgment reversed and new trial ordered, with costs to abide events.